WILLIAM C. RANDS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 62066, 68846. Promulgated October 16, 1936.

*Raymond H. Berry, Esq.*, and *Ralph W. Barbier, Esq.*, for the petitioner.

*DeWitt M. Evans, Esq.*, and *Leonard C. Mitchell, Esq.*, for the respondent.

1110

1112

OPINION.

STERNHAGEN:  The respondent has determined that for each of the four years in question the income which the petitioner has treated as income of the two trusts, one for his wife and one for his son, was in reality income of his own, taxable to him as an individual. In the notice of deficiency covering the years 1927, 1928, and 1929, the Commissioner held "that the beneficial title to the corpus of the trusts created by you for your wife and son was never relinquished, and the income from same represents taxable income to you as grantor." This is assailed by the petitioner, who vigorously insists that by the two instruments of 1923 he established trusts consisting of 2,500 shares of Motor Products Corporation stock, or such other property as by exchange or reinvestment should be acquired in lieu thereof. The respondent argues that both from the language of the instruments themselves and from the method and circumstances of their administration, there were in truth no trusts; and that in any event, if trusts may be recognized, they must be limited to the income from the alleged funds after it is derived by the petitioner as owner of the securities. In the evidence can be found detailed facts which tend to support each side of the controversy, and the ultimate decision can only be reached after carefully weighing the entire record.

The instruments themselves give the impression of declarations of trust in behalf of the wife and son of 2,500 shares of Motor Products stock, with the right in the trustee to sell and reinvest the proceeds and also to vote the shares. A closer examination, however, indicates that all that the so-called beneficiary was said to have was a right to receive the dividends from the original shares or an equivalent amount of periodical income from the successor securities during the life of the beneficiary. All of the substantial rights and incidents of ownership in the principal were retained by Rands as an individual, without let or hindrance from either the beneficiary or any other person. The only obligation which he purported to impose upon himself was the duty to distribute income "to the end that the dividend payable to said beneficiary shall remain undisturbed"; and this only so long as the beneficiary lived. Thereafter both the securities and the income therefrom were his own or his estate's.

If there were any doubt that the interest of the beneficiary was in each case limited to the dividends or equivalent income, this doubt would be dispelled by Rands' testimony as to the understanding and habitual practice with which he administered the trusts. He said that the beneficiary was in no event entitled to a distribution of gains or profits in the corpus, and the instrument itself indicates that the income from such gains and profits was not distributable. Consistently with this practical oral construction by the trustee of his own duties under an ambiguous instrument, the evidence shows that no profit has been in fact distributed and less income than the amount of dividends on the original shares. Thus the effect of the arrangement has been that Rands has never parted nor undertaken to part with the so-called corpus, but has retained the right and has fully exercised the right to build up the corpus for himself and his estate, qualified only by the undertaking to distribute an amount equivalent to the dividends upon the original 2,500 shares. In practice, so much only has been actually distributed as "they required"; whether in the judgment of Rands or of the beneficiaries is not clear.

There is evidence to indicate that Rands conducted himself as the sole and unqualified owner of the funds and in a manner wholly inconsistent with a proper regard for fiduciary responsibility. Large amounts which were supposed to be in the trust funds were loaned to Rands, Inc., a corporation of which Rands held substantially all the shares and which was engaged in active speculative trading in the stock market (see *Rands, Inc.*, 34 B. T. A. 1094). These loans were made without interest or security. Substantial amounts were also loaned to brokers on call. Whether in fact these uses of the funds proved to be profitable or otherwise is beside the point. Their significance is as an indication that no one regarded them as

trust funds in the custody of a fiduciary or that they were subject to any restrictions by virtue of the instruments of 1923.

Furthermore, although there was a showing on the books of account kept by Rands' bookkeeper of separate accounts attributed to the two trusts, this showing itself indicates that there was no nice regard for the existence of trust property and income and no segregation of distributable income, nondistributable profits or increment, or the sources of such distributions or withdrawals as were made. We think, therefore, that a full and careful consideration of all the evidence offers no escape from the view that the alleged trusts were wholly without substance and that the income which the taxpayer omitted from his own return upon the theory that it was separately taxable to each of the two trusts is properly to be taxed as his own. *Benjamin F. Wollman,* 31 B. T. A. 37.

This is not to say as a general rule that the income of a trust legally created and administered may be lightly attributed to the settlor and taxed to him. When, however, one attempts such a scheme, particularly by placing himself in the equivocal position of being both the settlor and the trustee, he must execute the plan with the most exact, even meticulous, adherence to it. The integrity of each detailed act must be established. If there is any shilly-shallying by him, he can not expect the Government to give recognition to a structure for which he himself has less than a high regard. While a tax-saving motive does not vitiate a plan otherwise legal, it may serve, when coupled with loose and inexact administration, to confirm a suspicion that the plan is one without substance or reality. This we think is the situation here.

As an alternative to the view that there were no trusts whatever, we think that at most the instruments established only an obligation upon Rands to hold the income in trust for these beneficiaries after it was derived by him from the securities, and that the securities themselves were at all times his own. Thus the legal effect was only as an assignment of future income, and as such did not operate to exclude it from his taxable income. It is only when the income-producing property is itself transferred that the income therefrom is no longer attributable to the transferor. *McCauley* v. *Commissioner,* 44 Fed. (2d) 919. Here it seems that at most Rands attempted to transfer the property itself to himself as trustee for himself and his estate as beneficiary, and the present ownership of the principal was still in him. Upon this view, if not upon the other, the petitioner has failed to establish that the income should, as a matter of law, be excluded from his return.

■ In determining the amount of gain derived from the redemption of the preferred shares and the debenture notes and from the sale of the common shares of the Motor Products Corporation, the

respondent used as the basis for computation the agreed value of the old Motor Products shares received in 1916 rather than the higher value of the Rands Manufacturing Co. shares on March 1, 1913. The petitioner claims to be entitled to the use of March 1, 1913, value as the basis. This controversy is precisely the same as that presented in *Rands, Inc., supra*, and, as in that proceeding, the decision here is that the respondent's determination is in error. The March 1, 1913, value is the correct basis to be used.

The gain derived from the redemption of the Motor Products debentures and preferred shares was treated by the respondent in his determination of the deficiency as capital gain. He now, by affirmative pleading, claims that the capital gain provision does not apply to the proceeds of redemption because the redemption of shares or debentures is not a sale or exchange; and that such proceeds are therefore properly to be taxed as ordinary income. This question has been fully considered in *John H. Watson, Jr.*, 27 B. T. A. 463, overruling *Henry P. Werner*, 15 B. T. A. 482, and followed in *Arthur E. Braun, Trustee*, 29 B. T. A. 1161, and *George A. Hellman*, 33 B. T. A. 901. We can see no distinction in principle, and the respondent's contention that the proceeds shall be treated as ordinary income is sustained.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

Smith and Leech dissent from the holding that the alleged trusts are without substance.